John R. Geary v. Commissioner.
Geary v. Commissioner
Docket No. 111758.
United States Tax Court
1943 Tax Ct. Memo LEXIS 279; 2 T.C.M. (CCH) 202; T.C.M. (RIA) 43259; May 31, 1943
*279 Held, that a certain trust created as part of a settlement between petitioner and his divorced wife was based on adequate and full consideration in money or money's worth, and resulted in no gift tax liability. Sanford D. Beecher, Esq., 1617 Land Title Bldg., Philadelphia, Pa., for the petitioner. Paul E. Waring, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined a deficiency in gift tax of the petitioner for the year 1938 in the amount of $13,305.96. In making such determination respondent stated as follows: Pursuant to an agreement between yourself and Camille Geary to compromise certain litigation, you created a trust on March 21, 1938. While it is conceded that the values of the rights transferred to Camille Geary and to your sons during their minority and the values of the rights retained for your own benefit or the benefit of your estate are not subject to gift tax, it is believed that the balance of the amount transferred after deducting the values of these rights represents a gift to your sons, their issue or surviving widows and is subject to gift tax. The parties submitted a stipulation, supported by numerous exhibits, *280 which stipulation is in substantially the following form: [The Facts] John R. Geary, petitioner, born April 12, 1867, and Camille McCollum, born April 7, 1892, were married in New York City on September 4, 1918. Camille McCollum was then a citizen of the United States, domiciled in New York State. At all times from 1903 until subsequent to 1938 petitioner was a nonresident citizen of the United States and domiciled in Japan until subsequent to 1933. After the marriage petitioner and his wife returned to Japan, where two children were born to them, John Richard Geary, Jr., born in Yokahama on July 12, 1919, and William Joseph Geary, born in Yokahoma on May 25, 1921. In November 1931, Mrs. Geary left Japan and took the two boys with her to her former home at Lockport, New York, where she took up residence and continued to reside with the two boys until subsequent to 1938. In 1932, after Mrs. Geary's departure from Japan, petitioner started divorce proceedings there and in January 1933, he obtained a decree of divorce in the Tokyo District Court. In 1932, after Mrs. Geary's departure from Japan with the two boys, petitioner started proceedings there to obtain custody of the *281 children and in July, 1933, he was awarded their custody by the Tokyo District Court. Shortly after returning to New York, on January 23, 1932, Mrs. Geary started proceedings in the Supreme Court of the State of New York for the County of New York for separation and support and for custody of the children. Under date of March 27, 1933, the Court entered its judgment awarding separate maintenance and support and the custody of the children to Mrs. Geary. Petitioner was not served with a summons in New York State in Mrs. Geary's separation and custody proceeding but was served with a copy of the Summons and Complaint in San Francisco, California, on March 8, 1932. His unsuccessful efforts to challenge the jurisdiction of the court as to the subject matter of the action are described in the report of the Official Referee. In connection with the New York separation and custody proceeding brought by Mrs. Geary the court on April 7, 1932, entered an order appointing a receiver for petitioner's personal property located in New York State, which consisted of a pension in the amount of $8,691.96 per annum which petitioner was entitled to receive from the General Electric Company at Schenectady, *282 New York, for the purpose of receiving and applying said funds on behalf of Mrs. Geary as alimony, support and maintenance of the children and for counsel fee. This order was continued in the judgment entered on March 27, 1933, in the separation and custody proceedings instituted by Mrs. Geary for the purposes set forth therein. In September 1935 petitioner notified the General Electric Company that he claimed all payments of his pension made to the receiver were illegal and void. The receiver then filed a motion for an order directing the General Electric Company to continue making such payments to him. The order was granted after the petitioner had appeared specially to object to the jurisdiction of the court in granting the order. The Appellate Division of the Supreme Court of New York County affirmed the order and the petitioner appealed to the New York Court of Appeals. The New York Court of Appeals affirmed the order December 31, 1936. On August 23, 1933, Mrs. Geary filed a bill or complaint against petitioner and the Eastern Union Investment Company in the New Jersey Court of Chancery. All of the stock of the Eastern Union Investment Company was owned by the petitioner or *283 his nominee on his behalf. The bill of complaint prayed that the petitioner and the investment company be enjoined from disposing of any assets or property standing in the name of the investment company, and for other relief. On August 23, 1933, the New Jersey Court of Chancery issued a restraining order against the Eastern Union Investment Company and on August 29, 1933, modified said order in a manner not here material. Shortly thereafter, on motion of counsel for petitioner, Mrs. Geary's New Jersey suit was removed to the Federal District Court for the District of New Jersey by reason of diversity of citizenship. The Federal District Court continued in effect the restraining order, as modified, issued by the Court of Chancery. On December 1, 1934, petitioner filed in the District Court of the United States for the District of New Jersey a separate answer to the bill of complaint brought against him and the Eastern Union Investment Company by Mrs. Geary in the New Jersey Court of Chancery which has been removed to the Federal Court. On November 9, 1933, attorneys for the petitioner and for Mrs. Geary held a conference. Neither the petitioner nor Mrs. Geary were present at this *284 conference. A memorandum respecting the conference and prepared by the attorneys attending the same was as follows: STATEMENT OF PROPOSITIONS TO BE DISCUSSED BY COUNSEL WITH MR. & MRS. GEARY RESPECTIVELY 1. How best to dispose of the decree of separation entered by the New York Court. 2. Work out a plan whereby a decree of divorce can be obtained in some suitable jurisdiction which will be beyond question all over the world and satisfactory to counsel on both sides. 3. Develop the proposition for a definite pension for Mrs. Geary during her life. 4. Develop an adequate trust estate for the support, education and welfare of the two boys during their minority, and also subsequent thereto. 5. Work out the features of an agreement providing for the custody of the children by their respective parents, the supervision of their education, and the right of visitation on the part of the parent not having custody for the time being. 6. Work out an arrangement for the payment of adequate fees to all of the counsel concerned. On January 7, 1934, petitioner made a written offer of settlement, which recited in part as follows: The plaintiff [Mrs. Geary] to be guaranteed, during her lifetime, *285 or until she remarries per year, to be paid quarterly, the first quarter payment to be made at the end of June, 1934, after the signing of a proper contract between the parties, and then quarterly per year after that. The following shares, owned by the Eastern Union Investment Company, to be held by trustees and to be pledged for this payment, and if the income on these shares is not sufficient to pay this amount, then a sufficient number of the shares may be sold to make up the difference. Upon the death or remarriage of the Plaintiff the shares shall revert back to a trust fund to be created for Mr. Geary's Estate in which the two boys shall participate. A separate trust shall be established by which 8/15ths of the Estate put in the trust, shall ultimately go to the two sons, but the income earned on the said trust shall be paid to me during my lifetime, and after my death 8/15ths of the income shall go to the boys, the trust to come to an end and the corpus to be distributed when William Joseph Geary reaches the age of thirty years. Mr. Geary is to provide from the income of the trust sufficient to support and educate the two boys and he is to have the direction and control *286 of their education until each of them has become twenty-one years old. Thereafter various letters passed between counsel for petitioner and counsel for Mrs. Geary and between petitioner and his own counsel, in which letters various offers of settlement and counter-offers of settlement are discussed and attempts were made to reconcile the differences in the various proposals. On August 9, 1934, counsel for petitioner and for Mrs. Geary held a conference attended also by petitioner. On October 25, 1934, petitioner made a written offer of settlement, and under date of November 22, 1934, counsel for Mrs. Geary wrote to counsel for petitioner stating that the offer made by petitioner dated October 25, 1934, was not acceptable to Mrs. Geary and also informed petitioner's counsel that Mrs. Geary proposed to proceed with preparation for trial of the New Jersey suit. On September 11, 1936, petitioner made a written offer of settlement to Mrs. Geary; on February 26, 1937, counsel for Mrs. Geary addressed a letter to petitioner's counsel, to which petitioner's counsel replied on March 4, 1937; and on March 15, 1937, petitioner and Mrs. Geary signed a settlement agreement. These documents *287 are interrelated and together constitute the final settlement agreement known as the settlement agreement of March 15, 1937. The settlement agreement provided for the settlement of all pending matters, the cancellation of all court orders, the compromise and termination of all litigation, the release of all claims, the setting up of a trust, and various other matters. The total amount of claims against petitioner cancelled by the settlement, as enumerated by petitioner, amounted to $2,275,171. By agreement of the parties prior to December 27, 1937, the restraining order against the Eastern Union Investment Company issued by the New Jersey Court of Chancery and continued by the Federal District Court for the District of New Jersey was cancelled. Under date of December 27, 1937, the Eastern Union Investment Company was completely liquidated by transfer of all of its assets to petitioner in exchange for all of its outstanding stock, which was cancelled. Under date of March 21, 1938, and pursuant to the said settlement agreement of March 15, 1937, the petitioner executed a deed of trust and transferred thereto certain securities, a list of which appears at the end thereof, all of which *288 said securities were acquired by him in the liquidation of the Eastern Union Investment Company. The trust agreement, after referring to the fact of the marriage of petitioner and Camille Geary, recited as follows: WHEREAS, differences have arisen between the settlor and the said Camille Geary, and the said Camille Geary has instituted various actions at law and in equity against said settlor and the Eastern Union Investment Company (in which the settlor has an interest), some of which are still pending; and WHEREAS, the settlor and the said Camille Geary have by agreement in writing, dated March 15, 1937, agreed to settle and compose their differences upon the terms and conditions in said agreement set forth; and WHEREAS, one of the terms of the said agreement provides for the creation of a trust by the settlor, under which the said Camille Geary and the said John Richard Geary, Jr., and William Joseph Geary shall be beneficiaries; and WHEREAS, the settlor desires, pursuant to the aforementioned provision of said agreement, to create a trust of the property and for the purposes hereinafter mentioned, NOW THEREFORE, THIS INDENTURE WITNESSETH: That in consideration of the premises *289 and in fulfillment of the provisions of the aforementioned agreement, the mutual covenants herein contained and of other good and valuable considerations and of the sum of One Dollar ($1.00), lawful money of the United States, to him in hand paid by the parties of the second part, the receipt whereof is hereby acknowledged, the party of the first part has granted, conveyed, assigned, set over and delivered, and by these presents does grant, convey, assign, set over and deliver unto the parties of the second part and its and their successors and assigns, certain property consisting of cash in the sum of $279.39 and of shares of common and preferred stock, hereinafter set forth in Schedule A annexed hereto and made a part hereof. Then followed detailed provisions as to the disposition of income and corpus in various eventualities, inter alia, as follows: During joint lives of both parties, Mrs. Geary to receive the difference between the General Electric Company pension payments and $12,000 per annum. 2,500 per annum to be paid to her for the use of each boy during minority for education and maintenance. $2,500 per annum to be paid directly to each boy upon attaining majority *290 and payments to increase to $3,000 per annum to each upon attaining age 25. Income in excess of the foregoing to be paid to petitioner. After petitioner's death $12,000 per annum to be paid to Mrs. Geary during her lifetime and the balance equally to the boys. Eventual corpus distribution to the two boys or their spouses or issue one-half at age 35 and the other half at age 40 or at the death of Mrs. Geary. Corpus distribution to petitioner or his estate upon ultimate failure of issue of the boys. The total property transferred to the trust had a value of $301,931.78, of which respondent claims petitioner made a gift of $147,889.87, representing the present value of the sons' interests in income and corpus after attaining majority. [Opinion] The single problem posed by the above facts is whether the petitioner in creating the trust and making provision, inter alia, for the two boys after they attained majority, made a taxable gift of the then present value of such future interests in income and corpus, or were the transfers of such interests part and parcel of the settlement agreement and made "for an adequate and full consideration in money or money's worth." The *291 record reveals a situation in which an unhappy marriage terminated in divorce, bitter arguments, and court proceedings over the custody of the children and a seemingly interminable dispute featured by litigation over money payments to the divorced wife. The existing situation was satisfactory to neither party and it appeared mutually advantageous that the differences be composed in a settlement. The bitterness of feeling made this a long, difficult, and expensive operation extending over several years. After many conferences between counsel, a voluminous exchange of letters and memoranda, numerous proposals and counter-proposals of settlement, the parties at last agreed on a settlement. Included in the settlement was the provision for the creation of a trust primarily for the benefit of Mrs. Geary but also of benefit to the two sons of the parties. Respondent contends that the provisions for the sons were solely the idea of petitioner and that no part of the consideration supporting the agreement and moving from Mrs. Geary to petitioner supports these provisions. Therefore, he argues, the trust to this extent was not for adequate and full consideration in money or money's worth and *292 constituted a taxable gift of petitioner to the sons. On the record it is impossible to say who first expressed concern for the children. It is indisputable that petitioner was devoted to his sons. He had been deprived of their companionship by the maneuvering of his wife and was solicitous of their welfare. He was fearful that they might be turned against him permanently. Thus, while desiring to hold their affection, he was wary lest the influence of their monther might erect a permanent barrier between him and them. The record shows that his attitude was to meet all legal parental obligations of support and maintenance during minority but to go slowly in committing himself for their future benefit. Respondent points to various letters and memoranda of petitioner and his counsel as supporting his contention that petitioner was solely responsible for the insertion of the provisions for the boys. We do not find in the documents the evidence of conclusive character that respondent claims for them. They must be read in the light of the entire controversy to which they related. There are, on the other hand, certain parts of the record that indicate that Mrs. Geary was at all times actively *293 interested in providing for the boys. This appeared early in 1934 in various proposals for settlement suggested by her counsel. At about the same time petitioner stated that he was going to provide separately for the children and that there would be no provision in the trust in any way concerning the children. During the later phases of the negotiations Mrs. Geary apparently insisted on the insertion of more generous provisions for the protection of the future property interests of the sons, including a commitment to make provision in petitioner's will. In Commissioner v. Mesta, 123 Fed. (2d) 986, the court observed: "We think that we may make the practical assumption that a man who spends money or gives property of a fixed value for an unliquidated claim is getting his money's worth." So it is here. There is no doubt that the settlement was based on a adequate and full consideration in money or money's worth. The claims against petitioner aggregate more than $2,000,000. They were of many kinds and varying character. The provision for the children was one of the points in dispute. At one stage in the negotiations petitioner insisted on setting up wholly *294 separate trusts for the boys. On this point he yielded and the final settlement included the settlement of this along with all other matters. We know of no basis in law for allocating the consideration for such a settlement to the various factors in dispute prior to the settlement. When the provisions for the boys were brought within the general terms of the settlement they shared in and formed a part of the consideration for the settlement. Without extending the discussion further, we have concluded on the record, and hold, that the settlement was a single unified transaction based on a single but "adequate and full consideration in money or money's worth," and that the creation of the trust fund in all of its aspects, the provisions for petitioner's sons as well as other provisions, was accordingly based on adequate and full consideration in money or money's worth. It follows that no gift tax liability was incurred by petitioner. Decision will be entered for the petitioner.