Sanford D. BEECHER and William White, Jr., Executors of the Estate of John Richard Geary, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 19837.

United States District Court
E. D. Pennsylvania.

April 15, 1959.

**324**

Joseph W. Price, 3rd, Sanford D. Beecher, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiffs.

W. Wilson White, U. S. Atty., Norman C. Henss, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

WATSON, District Judge.

This action comes before the Court for disposition upon plaintiffs' motion for summary judgment as provided under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C. Counsel have entered into a stipulation which sets forth the material facts of the case and the Court will base its conclusions of law upon the facts so stipulated.

Plaintiffs seek the refund of federal estate taxes in the amount of $31,044.11 which, they allege, represents an overpayment by the estate of John Richard Geary to the United States of America. Defendant denies plaintiffs' allegations and asks for judgment in its favor on the motion for summary judgment. The parties, through their attorneys, have entered into a stipulation of facts which have been made a part of the record in this action. There has been no other evidence presented to the Court and, therefore, the Court will treat the stipulation and the material facts contained therein as its findings of fact.

Findings of Fact

1. John R. Geary, hereinafter referred to as the decedent, and Camille McCollum were married in New York City on September 4, 1918. Camille McCollum was then a citizen of the United States domiciled in the State of New York. From 1903 until subsequent to 1938, the decedent was a non-resident citizen of the United States, domiciled in Japan until subsequent to 1933.

2. After their marriage, the decedent and his wife returned to Japan, where two children were born to them. John Richard Geary, Jr., was born in Yokahama on July 12, 1919, and William Joseph Geary was born in Yokahama on May 25, 1921. In November, 1931, Mrs. Geary left Japan, taking the children with her, and returned to her former home in Lockport, New York, where she continued to reside with the two boys until subsequent to 1938.

3. In 1932, after Mrs. Geary's departure from Japan, the decedent instituted divorce and custody proceedings in Tokyo. In January, 1933, the Tokyo District Court awarded a divorce decree to the decedent, and in July, 1933, it awarded him the custody of the two boys.

4. Shortly after returning to New York, Mrs. Geary instituted separation and custody proceedings in the Supreme Court of the State of New York, which

Court, on March 27, 1933, awarded separate maintenance and support and the custody of the children to her. In connection with this proceeding the court, on April 7, 1932, entered an order appointing a receiver for the decedent's personal property within the state for the purpose of applying the property, which consisted of a pension of $8,691.96 per annum from the General Electric Company at Schenectady, New York, toward the alimony, support of the children, and attorneys' fees.

5. On August 23, 1933, Mrs. Geary filed a bill of complaint in the Chancery Court of New Jersey against the decedent and his wholly owned investment corporation, the Eastern Union Investment Company, to enjoin them from disposing of any of the assets held by the Company, on the grounds that the assets had been obtained from her by fraud and deceit. A restraining order was issued by the state court in which the suit was commenced, which was continued by the Federal District Court to which the suit was removed.

6. The decedent and his former wife each bitterly contested any move which the other took. There was a great deal of correspondence between the respective attorneys for the decedent and his former wife regarding settlement of the various issues which had arisen between them. All of the matters were ultimately settled by an agreement, hereinafter referred to as the March 15, 1937, settlement, consisting of several documents.

7. As a part of the March 15, 1937, settlement, the decedent agreed to establish a trust, a portion of the income and corpus of which would inure to the benefit of his two children. The Commissioner asserted a gift tax liability as to a part of the benefits accruing to the children, on the grounds that the provisions for the sons were solely the idea of the decedent, and that no part of the consideration moving from Mrs. Geary to the decedent supported these provisions. The decedent petitioned the Tax Court to order the abatement of the proposed gift tax liability, and it did so

on May 31, 1943, holding that the transfer in trust for the two boys was based on an adequate and full consideration in money or moneys' worth. Comm. v. John R. Geary, 2 T.C.M. 202–206, CCH Dec. 13, 245(M).

8. In addition to his agreement to establish the inter vivos trust above mentioned, Mr. Geary also agreed in the settlement agreement of March 15, 1937,

"1. Mr. Geary will execute and deliver an instrument which will obligate him to leave one-quarter of his net estate available for distribution to each of his two children who shall survive him, or to the issue of either child who shall predecease him leaving issue who shall survive Mr. Geary. The agreement will be so drafted and executed as to bind Mr. Geary's estate whether or not a will is made in accordance with its provisions. He will, however, make a will as required by the agreement."

On March 30, 1938, Mr. Geary executed and delivered to Camille Geary a written instrument or agreement by which he agreed to carry out these conditions.

9. On December 10, 1947, decedent executed his last will and testament, and upon probate of the same following decedent's death on March 17, 1948, letters testamentary were issued to Sanford D. Beecher and to Henry L. Geary. William White, Jr., was appointed succeeding and substitute co-executor on December 22, 1954 following a decree dated December 16, 1954, approving the resignation and granting the removal of Henry L. Geary. The provisions carrying out the conditions of the settlement agreement of March 15, 1937 are found in paragraph Fourth (a), (b) and (c) of the will, which provide:

"Fourth: (a) Provided he shall survive me, I give, devise and bequeath to my son, John Richard Geary, Jr., absolutely and forever, an amount equal to one-quarter of all the net estate and property, ex-

cepting the personal items mentioned in sub-paragraphs (a), (b) and (c) of paragraph Third herein, of whatsoever nature and wheresoever situated, of which I shall die seized and possessed which shall remain after paying all debts, expenses of administration, executors' and counsel fees, and all taxes or other governmental impositions payable by law out of my estate. In the event that my said son, John Richard Geary, Jr., shall not survive me and shall leave lawful issue me surviving, then and in that event, I give, devise and bequeath the amount which would have been payable hereunder to John Richard Geary, Jr., had he survived me, to such issue, per stirpes. I direct that this gift to my son, John Richard Geary, Jr., or to his issue, as the case may be, may be paid in kind in property, if my executors in their sole discretion so determine.

"(b) (Same as (a) but for the benefit of the other son, William Joseph Geary.)

"(c) It is my will that the foregoing gifts, devises and bequests enumerated in paragraph Fourth, subparagraphs (a) and (b), shall constitute a first charge upon my net estate available for distribution, and that any other legacies of any nature in this Will contained (excepting those provided in paragraph Third, subparagraphs (a), (b) and (c) shall in no wise diminish the amount thereof."

10. Subsequently the decedent died, and his executors filed a federal estate tax return. Included in the schedule of the decedent's alleged debts were two items of $56,242.50 each, representing the one-fourth of the decedent's estate payable to each of his sons under the terms of his will above quoted and in accordance with the March 15, 1937 settlement. The Commissioner disallowed these deductions on the grounds that they were bequests. The executors paid the deficiency resulting from the disallowance of these deductions, and filed a claim for refund of the amounts paid. The claim for refund was disallowed by registered mail, and the executors commenced the instant suit within two years thereafter.

11. The first account of the executors was filed and called for audit on December 8, 1954. The account was adjudicated and confirmed by the Orphans' Court on December 30, 1954.

 12. The provisions of the will leaving one-fourth of the decedent's net estate to each of his two sons were founded on a promise or agreement contracted bona fide for an adequate consideration in money or money's worth.

 13. The decision of the Tax Court in the gift tax case, Commissioner v. John R. Geary, supra, is not *res judicata* and does not constitute an estoppel by judgment with respect to the question whether the claims of the decedent's two sons based on the provisions for them in the will, the settlement agreement of March 15, 1937, and the agreement of March 30, 1938, constitute "claims against the estate."

The Court has deleted Paragraph 14 of the stipulation of facts and said paragraph is not included in the Court's findings of fact. This paragraph refers only to the existence of certain exhibits and documents and as such are not essential parts of the Court's findings of fact.

### Discussion

John R. Geary, hereinafter referred to as the decedent, and Camille McCollum were married in New York City on September 4, 1918. Geary was domiciled in Japan at the time of the marriage and continued to live there until 1938. During that time two children, John Richard Geary, Jr. and William Joseph Geary, were born to them in Japan. In 1931, Mrs. Geary left Japan with the two children and returned to the United States. In 1933, the decedent was awarded a divorce decree from his wife in Tokyo, Japan and in the same year his wife was awarded separate maintenance and support and the custody of the children in

the Supreme Court of New York. In connection with the latter proceeding, that court, on April 7, 1932, entered an order appointing a receiver for the decedent's personal property within the state of New York which consisted of a pension from the General Electric Company. The purpose of the order was to apply the proceeds of the pension toward the alimony, support of the children and attorneys' fees. On August 23, 1933, Mrs. Geary instituted suit against the decedent and his investment corporation, the Eastern Union Investment Company, to enjoin them from disposing of any of the assets which they held on the ground that the assets had been obtained from her by deceit. The suit was removed from the state court to a Federal Court and the latter court continued in effect a restraining order which had been issued by the state court.

The decedent and his wife engaged in a long and bitter contest which was finally resolved by an agreement in writing hereafter referred to as the agreement of March 15, 1937. In this document the decedent agreed to establish an inter vivos trust, a portion of the income and corpus of which would inure to the benefit of his two children. Following the imposition of a gift tax liability against the benefits accruing to the children, he petitioned the Tax Court to order the abatement of the proposed gift tax liability on the ground that the transfer in trust for the benefit of his two children was made for an adequate and full consideration in money or money's worth. The Tax Court allowed the relief sought. The March 15, 1937 settlement agreement also contained the promise of the decedent as follows:

"1. Mr. Geary will execute and deliver an instrument which will obligate him to leave by will one-quarter of his net estate available for distribution to each of his two children who shall survive him, or to the issue of either child who shall predecease him leaving issue who shall survive Mr. Geary. The agreement will be so drafted and executed

as to bind Mr. Geary's estate whether or not a will is made in accordance with its provisions. He will, however, make a will as required by the agreement."

On March 30, 1938, Mr. Geary executed and delivered to Camille Geary a written instrument by which he agreed to carry out these conditions.

On December 10, 1947, decedent executed his last will and testament which carried out the conditions of the settlement agreement of March 15, 1937. Paragraph Fourth of the will contains the conditions which provide:

"Fourth: (a) Provided he shall survive me, I give, devise and bequeath to my son, John Richard Geary, Jr., absolutely and forever, an amount equal to one-quarter of all the net estate and property, excepting the personal items mentioned in sub-paragraphs (a), (b) and (c) of paragraph Third herein, of whatsoever nature and wheresoever situated, of which I shall die seized and possessed which shall remain after paying all debts, expenses of administration, executors' and counsel fees, and all taxes or other governmental impositions payable by law out of my estate. In the event that my said son, John Richard Geary, Jr. shall not survive me and shall leave lawful issue me surviving, then and in that event, I give, devise and bequeath the amount which would have been payable hereunder to John Richard Geary, Jr., had he survived me, to such issue, per stirpes. I direct that this gift to my son, John Richard Geary, Jr., or to his issue, as the case may be, may be paid in kind in property, if my executors in their sole discretion so determine.

"(b) (Same as (a) but for the benefit of the other son, William Joseph Geary.)

"(c) It is my will that the foregoing gifts, devises and bequests enumerated in paragraph Fourth,

subparagraphs (a) and (b), shall constitute a first charge upon my net estate available for distribution, and that any other legacies of any nature in this Will contained (excepting those provided in paragraph Third, subparagraphs (a), (b) and (c)) shall in no wise diminish the amount thereof."

After decedent's death, his executors filed a federal estate tax return which included two deductions of $56,242.50 each which represented one-fourth of decedent's estate payable to each of his sons under the terms of the will and in accordance with the March 15, 1937 settlement. The Commissioner disallowed the deductions on the grounds that they were bequests. The executors paid the deficiency tax and filed a claim for refund of the amounts paid. The claim for refund was disallowed and the executors commenced the instant suit within two years thereafter.

█ The sole question before the Court is whether the provisions of decedent's will in which he left one-fourth of his estate to each of his two sons constitute bequests or are in satisfaction of claims against the estate. The Internal Revenue Code of 1939, Section 812, which is here controlling, provides as follows:

"Net estate.

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \*

"(b) *Expenses, losses, indebtedness, and taxes.* Such amounts—

\* \* \* \* \* \*

"(3) for claims against the estate,

\* \* \* \* \* \*

as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, \* \* \*. The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; \* \* \*.

"For the purposes of this subchapter, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.' \* \* \*" 26 U.S.C.1952 ed., § 812.

Plaintiffs contend that the obligation imposed upon the estate of the decedent is in the nature of a debt and, therefore, should be imposed upon the gross estate prior to the determination of the value of the estate for estate tax purposes.

In the case of Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, the Supreme Court stated clearly that the doctrine of res judicata is limited to suits involving the same cause of action. Therefore, the determination by the Tax Court that the corpus of a trust established by decedent during his lifetime for the benefit of his sons was not a gift but, rather, a transfer based upon an adequate consideration in money or money's worth does not affect the result of this lawsuit even though the creation of that trust was provided for in the agreement of March 15, 1937.

Exhaustive research has failed to reveal a case which is directly in point. This Court believes that the obligations assumed by the decedent were " \* \* \* bona fide" and were contracted " \* \* \* for an adequate and full consideration in money or money's worth."

In addition to the above requirement, which merely prescribes the type of consideration which must be present in order to qualify a claim as a deduction against the gross estate, we must also determine exactly the nature and extent of the decedent's obligation.

A reading of the agreement between decedent and Mrs. Geary discloses that the decedent had agreed to leave one-half of his "net estate" to his two children. Decedent's will was prepared and executed in exact compliance with that portion of the agreement. Nowhere, either in the agreement or the will, did decedent indicate that he was thereby subjecting his estate to a claim of one-half of its gross value.

Let us assume, arguendo, that there had been no agreement of March 15, 1937. We would have then only the provisions in the will of the decedent and it would be futile to describe such provisions as anything but bequests or devises and, as such, would total an amount equal to one-half of decedent's estate *after* deductions, including federal estate taxes. Let us now consider what the situation would be had decedent neglected or refused to make provision for his sons in his will as provided by the agreement. And let us also assume that the agreement was supported by adequate consideration " * * * in money or money's worth." It is clear that there would be an enforceable claim against the estate of decedent but it would be a claim to one-half of decedent's net estate and not to one-half of his gross estate as contended by plaintiffs. The agreement and the will speak for themselves and are illustrative of the intent of the parties. Decedent, in reference to the portion of his estate to be left to his sons, directed in his will that " * * * any other legacies of any nature in this will * * * shall in no wise diminish the amount thereof." Thus decedent made it clear that he did not regard as debts his sons' interests in his estate, for if he had done so, the direction in the will that other "legacies" were not to diminish the amount of such interests would be mere surplusage.

As the Court has stated heretofore, it believes that decedent's obligations to his sons were enforceable and that they were based upon consideration in "money or money's worth." But the Court also believes that decedent had obligated himself only to the extent that he would provide for his children in his will and, had he failed to do so, then by virtue of the agreement his sons would have shared in the estate as legatees or devisees with priority over others of the same class when distribution was made.

The Court, therefore, will enter judgment for the defendant and against the plaintiffs in this action.

### Conclusions of Law

1. The Court has jurisdiction of this action and of the parties thereto.

2. The Commissioner of Internal Revenue did properly impose and collect the federal estate tax on the estate of John Richard Geary as provided in the Internal Revenue Code of 1939.

3. The disallowance by the Commissioner of Internal Revenue of the claim for refund of estate taxes in this action was proper and was done in accordance with the law as set forth in the Internal Revenue Code of 1939.